UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| KIMBERLY CRAFT,    )<br>               Plaintiff,   )<br>                          )<br>-vs-                      )<br>                          )<br>LELAND DUDEK[1],   )<br>Acting Commissioner of Social Security   )<br>Administration,   )<br>                          )<br>               Defendant.   )<br>_____   ) | Civil Action No.: 4:24-cv-01642-RMG-TER<br><br>Report and Recommendation |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I. RELEVANT BACKGROUND

### A.  Procedural History

Plaintiff filed an application for DIB in October 2020, alleging onset of March 1, 2020. (Tr. 17). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a VE testified at a hearing in January 2023. (Tr. 17). The Administrative Law Judge (ALJ) issued an unfavorable decision on February 20, 2023, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 17-31). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in February 2024, making the ALJ's decision the

---

[1] Leland Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted for Defendant Martin O'Malley who was the Commissioner of Social Security when this action was filed.

Commissioner's final decision. (Tr. 1-3). Plaintiff filed this action in April 2024. (ECF No. 1).

**B.     Introductory Facts**

Plaintiff was born in July 1992, and was twenty-seven years old on the alleged disability onset date. (Tr. 30). Plaintiff has past relevant work as an assembler. (Tr. 29). Plaintiff alleges disability initially due to severe manic bipolar, depression, anxiety, and PTSD. (Tr. 95). Pertinent records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of February 20, 2023, the ALJ made the following findings of fact and conclusions of law (Tr. 17-31):

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

2. The claimant has not engaged in substantial gainful activity since March 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: post-traumatic stress disorder (PTSD), anxiety, depression, bipolar disorder, abdominal dysfunction, hematochezia, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should avoid concentrated exposure to hazards. She can understand and remember simple and detailed instructions. She can attend and perform simple unskilled tasks. She can maintain concentration and attention for periods of at least two hours. The claimant can respond appropriately to supervision, coworkers and usual work situations but would perform best in settings that do not require ongoing frequent interaction with the public. The claimant can be aware of normal hazards and take appropriate precautions, use judgment, and make simple

      work-related decisions and respond appropriately to changes in a routine work setting.

6.    The claimant can perform past relevant work as an assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2020, through the date of this decision (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to provide adequate reasons for his subjective symptom evaluation and the ALJ based part of the decision on a mistake of fact. (ECF No. 8 at 18-24). Defendant argues that the ALJ's decision comports with law, was adequately articulated to facilitate judicial review, and satisfies the substantial evidence standard. (ECF No. 9).

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and

noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

<u>Subjective Symptom Evaluation</u>

Plaintiff argues the ALJ failed to provide adequate reasons for his subjective symptom evaluation and the ALJ based part of the decision on a mistake of fact. (ECF No. 8 at 18-24). Plaintiff argues the ALJ's reliance on intermittent symptom improvement is contrary to *Shelley Cannon v. Comm'r*, 61 F. 4th 341 (4th Cir. 2023). (ECF No. 8 at 21). Plaintiff argues her allegations are reflective of the nature of chronic mental health impairments, of good days and bad days. (ECF No. 8 at 22).

SSR 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.*(internal citations and quotations omitted). Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical

evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

    1. Daily activities;

> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 416.929(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

Here, Plaintiff has specifically asserted *Shelley Cannon v. Comm'r*, 61 F. 4th 341 (4th Cir. 2023) as applicable. In *Cannon*, the Fourth Circuit Court of Appeals found that depression, "particularly chronic depression" is "one of those other diseases" quoted in *Arakas*. *Id.* at 361(emphasis added). "Stated differently, symptoms of MDD, like those of fibromyalgia, are 'entirely subjective,' determined on a case-by-case basis. Ultimately, because of the unique and subjective nature of MDD, subjective statements from claimants 'should be treated as evidence substantiating the claimant's impairment.'" *Id.* at 361-362 (internal citations omitted). It is error for an ALJ to improperly increase the burden of proof by "requiring that her subjective statements be validated by objective medical support." *Id.* at 362. "[T]he ALJ cherry-picked from the record, highlighting [claimant's] good moments and bypassing the bad." *Id.* at 362. While the ALJ in the instant action found "depression" as a severe impairment along with other mental health disorders, there is no diagnosis and treatment by Plaintiff's treating psychiatrist during the relevant time period

8

of chronic depression or depression, as discussed below.

    The ALJ summarized Plaintiff's allegations as:

At the hearing, the claimant testified that she lives alone with her eight-year-old daughter. She reported that the loss of a child in 2021 led to her mental health issues. The claimant testified that her mental health issues is the primary reason why she is unable to work. She reported seeing a psychiatrist every three months for the last three years and a therapist every two weeks.[4] The claimant stated that she is unable to do her previous job due to daily panic attacks. She reported that her mother came to her job every day to talk to her and encourage her to get through the workday (testimony).

Currently, the claimant indicated that she has daily crying spells with no triggers and panic attacks three times a week with no triggers. The claimant stated that she can drive, but she does not get out. She admitted that she drops her daughter off at school and goes to her mother's home every day because she cannot function.

She stated that she goes grocery shopping with her mother early in morning because no one is out. She reported that she does not go anywhere without her mother because she would shut down. She stated that she spent her day coloring and doing puzzles at her mother's home. The claimant admitted that she uses the internet to buy things online and to read articles. She denied participating in family functions because she is uncomfortable and due to crying spells. The claimant stated that there are periods when she is home alone. She reported that she can clean her home, but she does laundry and cooking at her mother's home.

She denied going to the movies, going to a restaurant, or going to church. The claimant stated that she does not meet with her daughter's teacher's at school. She denied that any one has ever tried to remove her child from her custody or revoke her driver's license due to her mental health issues (testimony).

The claimant stated that she sleeps 2-3 hours a night due to night terrors. She reported that she naps during the day for 2-3 hours at her mother's home. The claimant indicated that she is on medication that helps her depression, anxiety, and panic attacks, but she reported side effects of abdominal pain. She reported abdominal pain and rectal bleeding daily. She stated that the bleeding had resolved temporarily but it has returned. The claimant stated that her pain lasts all day depending on her activities. She indicated that she has been recommended to rest and elevate her legs for four hours a day. The claimant testified that her weight also

---

[4] There are no records from Plaintiff's therapist in the 1,566 page record; Plaintiff is represented by counsel.

      causes her problems but was unable to articulate what problems they caused (testimony).

(Tr. 23-24). The ALJ found that Plaintiff's statements about her symptoms were not entirely consistent with the evidence. (Tr. 24).

The medical evidence record as to any mental health during the relevant period before the ALJ is summarized below chronologically as Plaintiff alleges the ALJ cherry picked the record. Objective evidence is a relevant consideration as a part of the entire subjective symptom evaluation. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c)(A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities).

**2020**

On March 3, 2020, Plaintiff was seen at the Mental Health Clinic by Dr. Nigamatov. Plaintiff had no complaints. History was bipolar disorder with one hospitalization outside of the relevant period. Plaintiff reported doing well and had switched to Seroquel without any issues. Plaintiff reported steady mood, good sleep, and good appetite. "She is as usual accompanied by her mother who confirms her report." (Tr. 409). Plaintiff was twenty seven years old at the time. Plaintiff denied any depressive, anxiety, or manic symptoms. (Tr. 409). Plaintiff examined with calm behavior, cooperative attitude, appropriate affect, euthymic mood, and intact concentration/attention. (Tr. 409). Diagnosis was unspecified bipolar and related disorder, PTSD, and rule out residual schizophrenia. (Tr. 409). Prescriptions on that date were Lamictal, propranolol, Seroquel, and Zoloft. (Tr. 410).

On March 13, 2020, Plaintiff was seen for a headache. Plaintiff examined with normal mood, affect, and behavior. (Tr. 465, 1204).

On June 29, 2020, Plaintiff was seen for abdominal pain. Past medical history noted depression("Chronic: No") and bipolar unspecified. (Tr. 444, 781).

On July 14, 2020, Plaintiff was seen by gastroenterology. Plaintiff examined with normal mood, affect, and behavior. (Tr. 442).

On July 20, 2020, Plaintiff was seen by Dr. Nigamatov. (Tr. 411). "Anxiety is up again." (Tr. 411). Plaintiff complained of exacerbation of anxiety and insomnia; continued adjustment of medication dose was discussed. Plaintiff again was accompanied by her mother. (Tr. 411). Plaintiff reported decreased interest, decreased energy, and decreased concentration. (Tr. 411). Upon exam, Plaintiff had cooperative attitude, calm behavior, depressed and anxious mood, and intact attention/concentration. (Tr. 411). Diagnosis were the same as March. (Tr. 411).

On October 14, 2020, Plaintiff was seen by gastroenterology for abdominal pain. (Tr. 429). Plaintiff examined with normal mood, affect, and behavior. (Tr. 434).

On October 20, 2020, Plaintiff was seen by Dr. Nigamatov. (Tr. 413). Plaintiff continued to complain of anxiety and insomnia. Plaintiff reported a pending disability hearing. "She continues to live with her daughter and assisted by her mother who lives nearby." (Tr. 413). Plaintiff reported decreased interest, decreased energy, decreased concentration, decreased appetite, and decreased psychomotor. (Tr. 413). Upon exam, Plaintiff had cooperative attitude, calm behavior, anxious mood, and intact attention/concentration. (Tr. 413). Diagnosis were the same as March 2020. (Tr. 413). Prescriptions issued on that date were Lamictal, propranolol, Seroquel, and Zoloft. (Tr. 414).

On October 20, 2020, Plaintiff was seen at an urgent care clinic for a rash and back pain. (Tr. 426). It was noted Seroquel and Lamictal dosages had been increased but they were not new medications to Plaintiff. (Tr. 426). Past reported diagnosis included bipolar unspecified and

depression. (Tr. 426). Plaintiff examined with normal mood, affect, and behavior. (Tr. 428).

**2021**

In January 2021, Plaintiff was seen by gastroenterology. (Tr. 665). Upon exam, Plaintiff had normal mood, affect, and behavior. (Tr. 665).

On April 7, 2021, Plaintiff was seen for hand pain and examined with normal mood and affect. (Tr. 940). On April 7, 2021, Plaintiff was seen by gastroenterology and examined with normal mood, affect, behavior, judgment, and thought content. (Tr. 947).

On May 21, 2021, Plaintiff was seen at urgent care for sinus problems and examined with normal mood, affect, and behavior. (Tr. 937).

On May 24, 2021, Plaintiff no showed for a visit with Mental Health. (Tr. 883). Other notes on that day with other providers show Plaintiff felt COVID symptoms. (Tr. 935).

On May 28, 2021, Plaintiff was seen by Dr. Nigamatov for complaints of akathisia and anxiety. (Tr. 884). "On inquiry, her main complaint is 'shakiness' and appears as EPS rather." (Tr. 884). A trial of Cogentin was discussed. Plaintiff denied manic symptoms. Upon exam, Plaintiff had cooperative attitude, calm behavior, and intact attention/concentration. (Tr. 884). Diagnosis were still the same as March 2020 and did not include depression. (Tr. 885). Cogentin(benztropine) was prescribed for restlessness. (Tr. 885).

On June 17, 2021, Plaintiff was seen by gastroenterology and examined with normal mood, affect, and behavior. (Tr. 933).

In June 2021, Plaintiff was seen for her arm and examined with normal mood, affect, and behavior. (Tr. 927, 1146).

In August 2021, Plaintiff was seen at least twice for COVID and examined with normal

mood, affect, and behavior. (Tr. 914, 1364). The past history diagnosis included "major depressive disorder, <u>single episode</u>, unspecified;" it is unclear when that was. (Tr. 1395)(emphasis added).

On October 21, 2021, Plaintiff was seen by Dr. Nigamatov with no complaints. (Tr. 886). "Patient reported 'I am doing it.' She presents, as usual, list of complaints, depression, anxiety, and insomnia, however appear[s] to be able to manage. She appears 'nervous' today due to her [being] present by herself (no mother around)." (Tr. 886). Plaintiff reported symptoms of depression, low motivation, hopelessness, anxious mood, panic attacks, and chronic worry; Plaintiff denied symptoms of mania. (Tr. 886). Upon exam, Plaintiff had cooperative attitude/behavior, okay mood, flat affect, and intact attention/concentration. (Tr. 887). Diagnosis were unspecified bipolar and related disorder(chronic illness, stable), PTSD(chronic illness, stable), and rule out residual schizophrenia. (Tr. 887). Medications were benztropine, Lamictal, propranolol, Seroquel, and Zoloft. (Tr. 887).

**2022**

On January 13, 2022, Plaintiff was seen by gastroenterology; Plaintiff examined with normal mood, affect, and behavior. (Tr. 908). On January 31, 2022, Plaintiff was seen by Colon and Rectal Surgery. Plaintiff examined with normal mood, affect, and behavior. (Tr. 902).

On March 9, 2022, Plaintiff was seen by Dr. Nigamatov. (Tr. 1532). Plaintiff's chief complaint was anxiety. Under history, it was noted "she presents [with] occasional depression and constant state of anxiety." "MSE: at baseline which is unremarkable." A taper of Zoloft was recommended to see if that medication was causing her physical side effects. (Tr. 1532). Plaintiff reported depressed and anxious mood. (Tr. 1532). Plaintiff examined with cooperative attitude, anxious/worried mood, and intact attention/concentration. (Tr. 1533).

On April 13, 2022, Plaintiff was seen by Dr. Nigamatov. (Tr. 1535). Plaintiff's taper of Zoloft reduced her physical side effects but exacerbated depression, anxiety, and insomnia. Alternative antidepressants like amitriptyline were discussed. Plaintiff reported symptoms of depressed/anxious mood, decreased energy, and low motivation. (Tr. 1535). Upon exam, Plaintiff had okay mood, cooperative behavior, and intact attention/concentration. (Tr. 1536).

On June 8, 2022, Plaintiff was seen by Dr. Nigamatov. (Tr. 1538). Plaintiff was unable to increase her amitriptyline dose further due to excessive sedation. Gradual titration of amitriptyline and taper of Seroquel was recommended. "MSE: at baseline, which is unremarkable." "She is still pending disability decision." (Tr. 1538). Plaintiff reported symptoms of depressed mood, decreased concentration, decreased interest, low motivation, anxious mood, and panic attacks. (Tr. 1538). Upon exam, Plaintiff had cooperative attitude, depressed/anxious/worried mood, and intact attention/concentration. (Tr. 1539). Plaintiff's long time treating psychiatrist, Dr. Nigamatov still had not diagnosed Plaintiff with depression, much less chronic depression. (Tr. 1539).

On July 31, 2022, Plaintiff was seen in the emergency room for a rash. (Tr. 1223). Plaintiff had spent the day at the lake. (Tr. 1229). Plaintiff examined with normal mood and behavior. (Tr. 1231).

On August 3, 2022, Plaintiff wanted a biopsy of a rash on her leg. (Tr. 1108). Plaintiff had already been seen in ER with a punch biopsy for this. (Tr. 1113). Plaintiff examined with normal mood. (Tr. 1115). On August 10, 2022, Plaintiff was seen by family medicine for cellulitis. (Tr. 1101). Plaintiff examined with normal mood and affect. (Tr. 1106). By September 2022, her skin had healed and Plaintiff also examined with normal mood and behavior. (Tr. 1481).

On August 31, 2022, Plaintiff was seen by mental health, Dr. Nigamatov. (Tr. 1542). Plaintiff

had no complaints at this visit. Plaintiff had tapered off Seroquel and titrated amitriptyline up without issues. Plaintiff was sleeping, had more energy, and more desire to get out of the house. Plaintiff had noticed more irritability and instability of mood. Continued titration of amitriptyline was discussed. (Tr. 1542). Upon exam, Plaintiff had depressed mood and intact attention/concentration. (Tr. 1542). Estimated discharge was December 2022. (Tr. 1545).

On November 30, 2022, Plaintiff was seen by Dr. Nigamatov. Plaintiff reported feeling emotional. On amitriptyline, Plaintiff had improved sleep, improved mood, more energy, and a desire to get out of the house. (Tr. 1523). Plaintiff denied symptoms of depression and mania. Plaintiff had symptoms of anxious mood and chronic worry. (Tr. 1523). Upon exam, Plaintiff had cooperative attitude, depressed/anxious mood, and intact attention/concentration. (Tr. 1523-1524). Plaintiff's diagnosis were: "unspecified bipolar and related disorder(prim dx) (chronic illness w/exacerbation, progression, or side effects)"; PTSD(chronic illness, stable); and anxiety disorder due to another medical condition(chronic illness w/exacerbation, progression, or side effects, severe). (Tr. 1524).

**2023**

On January 17, 2023, Plaintiff was seen by Dr. Nigamatov. (Tr. 1548). Plaintiff's chief complaint for the visit was depression, anxiety, and insomnia. (Tr. 1548). Plaintiff complained of "feeling manic," unable to sleep, high level of energy, anxiety, and racing thoughts. A trial of Abilify with plan to revert back to Seroquel if not successful was discussed. (Tr. 1548). Plaintiff denied symptoms of depression. Plaintiff reported anxious mood. Upon exam, Plaintiff had okay mood, intact impulse control, and intact attention/concentration. (Tr. 1549).

This is the entirety of the medical records in the record about Plaintiff's mental health.

There is no diagnosis and treatment in the relevant period before the ALJ of a diagnosis of depression, much less chronic depression as in the *Cannon* case cited by Plaintiff. Plaintiff's long time treating psychiatrist, Dr. Nigamatov, never diagnosed Plaintiff with depression. SSR 16-3p at *7 and 20 C.F.R. § 404.1529(c) state objective evidence is a <u>part</u> of the subjective symptom evaluation; Plaintiff's allegations do not exist alone in a vacuum separate and apart from the voluminous 1,566 page medical record. The facts in the instant case simply do not align with the *Cannon* case and *Cannon*'s record. However, despite never being diagnosed with or treated for chronic depression or depression during the relevant time period before the ALJ, the ALJ found depression as a severe impairment. (Tr. 20). There are several objective exams before the ALJ of abnormal mental objective findings. However, the ALJ repeatedly calls these exams mostly normal despite Plaintiff regularly examining with anxious, depressed, or worried mood. (Tr. 24-25). The ALJ later stated "mental health treatment notes document typically euthymic mood, except that her last date of service she was observed to have depression and anxiety." (Tr. 27). The ALJ stated "symptoms appeared stable with occasional notes of depressed, or worried mood and affect." (Tr. 27). The ALJ noted that "ultimately her symptoms were at baseline." (Tr. 27). The ALJ noted two visits in 2022 where Plaintiff had increased energy, improved sleep, and desire to get out of the house. (Tr. 27). There was no balancing or reconciliation of the fact that at the next visit Plaintiff appeared to be in a manic episode. (Tr. 1548).

The court cannot meaningfully review the findings and the record before it because, as Plaintiff argues, it does appear there was some mischaracterization of facts in the record by the ALJ. Based on the foregoing record and applicable case law, the court simply "cannot tell whether [the ALJ's] decision is based on substantial evidence." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.

1986). The ALJ has not provided the court with a meaningful opportunity to review the subjective symptom evaluation. Remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Proper explanation of this issue may have a significant impact on the Commissioner's determination at other Steps. Upon remand, the ALJ should take into consideration Plaintiff's briefed allegations of error and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

### III.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be reversed and that this matter be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

April 21, 2025  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).